UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JEREMY CEASE AND SARA CEASE, AS GUARDIANS OF J.C.;<br><br>Plaintiffs,<br><br>vs.<br><br>CHRISTINA HENRY, DR. GREG GADEN, CHARLIE SERSEN, BROOKE CHENEY, JAIMIE MUTTER, UNKNOWN STAFF AT KNOLLWOOD ELEMENTARY, DR. LORI SIMON, THE RAPID CITY AREA SCHOOL DISTRICT, SOUTH DAKOTA DEPARTMENT OF EDUCATION, AND RAPID CITY SCHOOL BOARD,<br><br>Defendants. | 5:22-CV-05015-RAL<br><br><br>OPINION AND ORDER ON PENDING MOTIONS AND GRANTING MOTIONS TO DISMISS |

Plaintiffs Jeremy Cease and Sara Cease ("the Ceases") brought this case as guardians of their child, J.C.  The Ceases enrolled J.C. at Knollwood Elementary ("Knollwood"), which is a part of Defendant Rapid City Area School District ("RCASD") overseen by Defendant Rapid City School Board ("RCSB").  While at Knollwood, J.C. was the custodial and tutelary responsibility of Defendants Dr. Greg Gaden ("Gaden"), Christina Henry ("Henry"), Charlie Sersen ("Sersen"), Brooke Cheney ("Cheney"), and Jamie Mutter ("Mutter").  The Ceases allege that Defendants subjected J.C. to routine abuse at Knollwood, which included leaving J.C. in soiled pull-ups, forcing J.C. to eat "unsafe" sensory foods, and disciplining J.C. through spanking and seclusion, all in violation of J.C.'s individualized education plan ("IEP").  Doc. 10 at 7–8.  The Ceases'

Amended Complaint alleges sixteen counts and names as an additional defendant the South Dakota Department of Education ("Department of Education"). Doc. 10.

The Department of Education filed a motion to dismiss arguing that the Ceases' claims are barred by the Eleventh Amendment, not timely filed under the Individuals with Disabilities Education Act ("IDEA") and allege insufficient facts to identify the alleged bad actors at the Department of Education. Doc. 17; Doc. 18. The Ceases then filed a motion to amend their complaint to name "Unknown Staff" at the Department of Education whom they hope to identify through discovery as being on notice of alleged mistreatment of J.C. at Knollwood. The remaining defendants—RCASD, RCSB, Gaden, Henry, Sersen, Cheney, and Mutter—also filed a motion to dismiss alleging that the Ceases' claims are untimely under the IDEA. Doc. 34. All defendants filed motions for this Court to take judicial notice of the record on the Ceases' administrative claim under the IDEA regarding J.C.'s treatment at Knollwood. Doc. 19; Doc. 35.

Because the gravamen of the Ceases' complaint is for failure to provide J.C. an appropriate public education under the IDEA based on J.C.'s IEP, the federal law claims in the Ceases' complaint must be dismissed despite their elaborate effort to plead and recast claims as not being under the IDEA. And because amendment of the complaint to name "Unknown Staff" of the Department of Education is futile as doing so would still not state a claim against Department of Education employees, the Ceases' motion to amend is denied. The motions for judicial notice are granted only to the extent that notice is taken that the Ceases had filed an administrative claim under the IDEA on which they received an adverse ruling on April 8, 2020.

## I.     Facts Relevant to the Motion to Dismiss Taken from Amended Complaint[1]

J.C. is the son of Jeremy and Sara Cease and has been diagnosed with autism spectrum disorder and ADHD. Doc. 10 at 5, 17. J.C. loved attending Knollwood during the 2018–2019 school year and the Ceases experienced no known issues with school officials complying with J.C.'s IEP during the 2018–2019 school year. Id. at 6. However, that was not true for the 2019–2020 school year when J.C. was enrolled in the third grade at Knollwood with his primary teacher being Mutter. Id. at 5–6.

To ensure that J.C. would receive an appropriate education, the Ceases and staff at Knollwood created an IEP for J.C., Id. at 5, which is a "personalized plan to meet all of [J.C.'s] educational needs" and to provide him with the free appropriate public education ("FAPE") promised to him under the IDEA, Fry v. Napoleon Cmty. Schs., 137 S. Ct. 743, 749 (2017) (cleaned up and citations omitted). J.C.'s IEP listed goals in academic subjects as well as accommodations to be made for J.C. because of his disability. Doc. 10 at 5. Those accommodations included that J.C. would only be required to eat "safe" foods due to his extreme sensitivity and that J.C. would receive help with his bathroom needs, specifically the use of his

---

[1] This Opinion and Order makes no findings of fact, but takes as true, at this point, the well-pleaded facts in the Amended Complaint.

pull-ups. Doc. 10 at 5–6; Doc. 21 at 3; Doc. 32 at 2. The IEP did not approve the use of Emergency

Safety Physical Intervention,[2] seclusion,[3] or spanking of J.C.[4] Doc. 10 at 6; Doc. 21 at 3.

During the 2019–2020 school year, J.C. came home from school on multiple occasions

with soiled or wet pull-ups that caused rashes and blisters, and J.C. reported being forced to eat

food that was not his "safe food." Doc. 10 at 6–7. J.C. at times was restrained either in a coat

closet or in a de-escalation area called "Hawaii" where he was left under the supervision of two

members of Knollwood staff. Id. at 8. J.C. allegedly was spanked at Knollwood. Id. The Ceases

also claim that school officials failed to properly document J.C.'s daily activities and achievements

under the IEP and indeed falsified its documentation. Id.

The Ceases began to homeschool J.C. in the fall of 2019. Id. at 9. They reenrolled J.C. in

another elementary school briefly in February of 2020, but again removed J.C. and homeschooled

him thereafter. Id. at 9–10. The Ceases allege that Defendant Gaden threatened them that if "they

---

[2] Emergency Safety Physical Intervention is the "authorized means of physically holding/moving a youth against his or her will to interrupt and control acute physical behavior." City of New York, Admin. for Childs. Servs., Safe Intervention Policy for Secure and Non-Secure Detention 6, https://www1.nyc.gov/assets/acs/policies/init/2014/O.pdf.

[3] Seclusion is:

> The involuntary confinement of a student alone in a room or area from which the student is physically prevented from leaving. It does not include a timeout, which is a behavior management technique that is part of an approved program, involves monitored separation of the student in a non-locked setting, and is implemented for the purpose of calming.

U.S. Dep't of Educ., Restraint and Seclusion: Resource Document 10 (2012), https://www2.ed.gov/policy/seclusion/restraints-and-seclusion-resources.pdf.

[4] Per the U.S. Department of Education, restraint and seclusion of students are not to "be used as routine school safety measures." U.S. Dep't of Educ., supra note 3, at 3. Instead, they should only be used where "a child's behavior poses imminent danger of serious physical harm to self or others and not as a routine strategy implemented to address instructional problems or inappropriate behavior." Id. South Dakota Codified Law requires that each school board adopt their own policy for the use of restraint and seclusion that dictates a procedure for notifying the parent of the student of an incident that required a use of restraint or seclusion, prohibiting prone restraint, and prohibiting the "involuntary confinement of a student locked alone in a room, unless there is a clear and present danger." SDCL § 13-32-20.

spoke of anything to anyone" about J.C.'s treatment at Knollwood, then Gaden "would ensure [the Ceases] would lose their business of Presidential Limousine and Luxury Tours." Id. at 9.  Around February 11, 2020, J.C. told his father that the school had threatened spanking or putting him into the de-escalation area if he told his parents what was happening at school. Id.

The Ceases filed an IDEA administrative complaint with the Department of Education alleging a denial of J.C.'s right to FAPE due to forcing him to eat "unsafe" foods and leaving him in soiled pull ups.  Doc. 18 at 2; Doc. 34 at 2–3.  The Department of Education appointed an investigator, and issued a final investigation report denying relief to the Ceases on April 8, 2020. Doc. 19; Doc. 35-1.

On February 15, 2022, the Ceases started this action asserting federal question jurisdiction by alleging the above facts and seeking remedies under 42 U.S.C § 1983 and § 1985, the IDEA, the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act of 1973, and invoking supplemental jurisdiction to allege various state common law claims. Doc. 1.  The Ceases filed an Amended Complaint before the defendants answered that deleted the IDEA claim from the original complaint.  Doc. 10; see Doc. 1 at 34–35.  The various defendants have filed their respective motions to dismiss arguing that any claim related to the IDEA was time barred and that the gravamen of the Amended Complaint is an IDEA claim.  Doc. 17; Doc. 33.  The Department of Education's motion to dismiss also claimed the suit was barred under the Eleventh Amendment to the Constitution.  Doc. 17.

The Ceases oppose both motions to dismiss, Doc. 21; Doc. 36, and have filed a motion to allow a proposed Second Amended Complaint, Doc. 22, to name "Unknown Staff" at the Department of Education, Doc. 22-1 at 1; Doc. 23 at 5.  The proposed Second Amended Complaint also adds a factual allegation that the Department of Education, RCASD, and RCSB "were on

notice of the abusive and discriminatory policies at Knollwood Elementary School prior to the events that gave rise to this lawsuit, but failed to take corrective action." Doc. 22-1 at 10; Doc. 23 at 5. The Ceases claim that through discovery they will be able to identify the unknown actors allegedly involved in the case. Doc. 23 at 6–7; Doc. 32 at 3. The Department of Education opposes the Ceases' motion to amend and claims that allowing the proposed Second Amended Complaint would be futile. Doc. 30 at 2.

## II.    Discussion of Preliminary Issues

### A.    Standard of Review on Motion to Dismiss

A challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). As such, courts must accept a plaintiff's factual allegations as true and make all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). When determining whether to grant a Rule 12(b)(6) motion for failure to state a claim, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary

judgment." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up and citation omitted).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730.

Here the defendants' motions to dismiss are somewhat blended factual and facial challenges. Notwithstanding that the Ceases purged their original Complaint of the IDEA claim and assert multiple other causes of action, the defendants view the Amended Complaint as expressing an IDEA claim, which is time barred under 20 U.S.C. § 1415(b), (g), (i) (2)(A)–(B). Doc. 18 at 5; Doc. 34 at 5. The assertion of an absence of jurisdiction because the Ceases in reality have just a time-barred IDEA claim has the characteristics of a factual challenge to this Court's subject matter jurisdiction. Whether the challenge to jurisdiction is factual or facial matters to

7

ruling on the motions for judicial notice of the administrative claim for violation of J.C.'s IEP; the fact that the Ceases filed an IDEA administrative claim and the denial date of that administrative claim determine whether any IDEA claim now would be time barred. However, some of the arguments for dismissal are facial challenges asserting a failure to state a claim within federal jurisdiction.

To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (citation and internal marks omitted).

## B.    Judicial Notice of the IDEA Administrative Complaint

All defendants moved for judicial notice of the Written Report of Final Decision relating to the Ceases' administrative claim under the IDEA. Doc. 19; Doc. 35. The Ceases did not file a brief in opposition. Rule 201 of the Federal Rules of Evidence allows a court to take judicial notice of "adjudicative facts" appearing in public documents, but only if those facts are "not subject to reasonable dispute." Fed. R. Evid. 201. Under this standard, a court can take judicial notice of the existence of a public document but generally cannot consider the statements or findings

contained therein for the truth of the matters asserted.  Insulate SB, Inc. v. Advanced Finishing Sys., 797 F.3d 538, 543 n.4 (8th Cir. 2015) (declining, at the motion to dismiss stage, to consider a summary judgment order and a deposition transcript as evidence that the defendant engaged in wrongdoing); Kushner v. Beverly Enters., Inc., 317 F.3d 820, 829–30 (8th Cir. 2003) (declining to consider government sentencing memorandum for the truth of the matters asserted therein when considering motion to dismiss).  The United States Court of Appeals for the Eighth Circuit has found underlying administrative records to be public records.  Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003).

As explained above, the defendants challenge this Court's subject matter jurisdiction by arguing that the Ceases have an IDEA claim, the limitations period ran on their right to appeal the IDEA administrative complaint denial, and all their federal claims in turn are barred.  The fact that the Ceases first addressed the issues with the school through an administrative complaint and received a denial in April of 2020 is not in dispute, though the findings of the report issued are.  The motions for judicial notice request only that the existence of the records be considered.  Doc. 19; Doc. 35.  The fact that there was a previous filing under the IDEA is relevant to the analysis regarding exhaustion and timeliness.  See infra III.A.  Thus, the motions for judicial notice, Doc. 19; Doc. 35, are granted but this Court will consider only the facts that the Ceases brought an administrative complaint under the IDEA, what the Ceases' complaints were, and that the claims were denied on April 8, 2020.  For purposes of ruling on the motions to dismiss, this Court accords no weight to and draws no facts from the explanation for the denial of the claim.

### C.    Proposed Second Amended Complaint

In response to the Department of Education's motion to dismiss, the Ceases moved to amend their Amended Complaint, Doc. 22, and attached their proposed Second Amended

Complaint, Doc. 22-1. "A decision whether to allow a party to amend [a] complaint is left to the sound discretion of the district court . . . ." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008). "A party may amend its pleading once as a matter of course within . . . 21 days after serving it" and the Ceases did so to delete their IDEA claim. Fed. R. Civ. P. 15(a)(1)(A); see Doc. 1 at 34–35; Doc. 10. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Motions for leave to amend "should be freely [granted] in order to promote justice." Plymouth Cty. v. Merscorp, Inc., 774 F.3d 1155, 1160 (8th Cir. 2015).

Denial of a motion to amend "is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." Hillesheim v. Myron's Cards & Gifts, Inc., 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted). An amendment is futile if it "could not withstand a motion to dismiss under Rule 12(b)(6)." Id. (citation omitted). Denial of a motion to amend can also be appropriate when the motion was made in "an effort to avoid an adverse summary judgement ruling," as such an action is typically indicative of bad faith. Postma v. First Fed. Sav. & Loan Ass'n of Sioux City, No. C 93-4058, 1995 WL 807082, at *11 (N.D. Iowa Mar. 28, 1995); see also Local 472 v. Ga. Power Co., 684 F.2d 721, 724 (11th Cir. 1982) (holding that a motion to amend was properly denied when done to avoid an adverse summary judgment ruling); Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 806 (1st Cir. 1987) (same); Hutchinson v. Lausel, 672 F. Supp. 43, 46–47 (D.P.R. 1987) (applying the same reasoning to motions to dismiss).

There is no basis to presume that the Ceases' motion to amend has behind it a dilatory motive. The Department of Education and the Ceases debate whether the Ceases' motion to amend was filed in bad faith as an attempt to evade the Department of Education's motion to dismiss.

Part of what the Department of Education argued is immunity under the Eleventh Amendment; with that immunity being less protective of Department employees for claims under 42 U.S.C. § 1983 et seq., the Ceases sought in the proposed Second Amended Complaint to name "Unknown Staff of the South Dakota Department of Education" in the caption in place of the Department of Education. The Ceases argue that the proposed Second Amended Complaint simply clarifies that "unknown" (contained earlier in the caption of the Amended Complaint) applies to all institutions named. However, this explanation makes little sense. The Amended Complaint's caption names five individuals employed at Knollwood and then names "Unknown Staff at Knollwood Elementary, Dr. Lori Simon, The Rapid City Area School District, South Dakota Department of Education, and Rapid City School Board." Doc. 10. While adjectives can modify several nouns, the Ceases' argument that "unknown staff" applied to the Department of Education is debunked by the interjection of "Dr. Lori Simon" between "Unknown Staff at Knollwood Elementary" and the organizational defendants. See Doc. 10. In the Amended Complaint, "unknown staff" is only used in a way where it can describe unnamed employees of Knollwood, and not of any other institutions listed in the Amended Complaint. Thus, rather than a clarification, the caption change in the Second Amended Complaint plainly is designed to avoid the Department of Education's motion to dismiss.

Beyond the change in the caption, the body of the Second Amended Complaint includes just one new allegation that adds essentially no new substantive facts. The new allegation in the Second Amended Complaint simply reads "[u]pon information and belief, the [Department of Education], [RCASD], and [RCSB] were put on notice of the abusive and discriminatory policies in place at Knollwood . . . prior to the events that gave rise to this lawsuit, but failed to take corrective action." Doc. 22-1 at 10; see Doc. 23 at 5. Although detailed factual allegations are

11

unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). To be plausible, the allegation must be more than a "naked assertion[] devoid of further factual enhancement" to allow this Court to draw a reasonable inference that the Department of Education, RCASB, and RCSB are liable for the alleged misconduct. See id. (cleaned up and citations omitted). The Second Amended Complaint makes no effort to allege how or when or through whom "unknown staff" at the Department of Education "were put on notice of abusive and discriminatory policies in place at Knollwood . . . prior to events that gave rise to the lawsuit, but failed to take corrective action." Doc. 22-1 at 10.[5] Despite the disingenuousness of the argument that the proposed Second Amended Complaint simply clarifies that the Amended Complaint named unknown staff of the Department, this Court hesitates to conclude that the effort to amend the complaint anew was in bad faith. Despite the disingenuousness of the argument that the proposed Second Amended Complaint simply clarifies that the Amended Complaint named unknown staff of the Department and is not merely an effort to evade the Department's motion to dismiss, this Court hesitates to conclude that the effort to amend the complaint anew was in bad faith.

However, for reasons discussed below, the motion to amend ultimately is futile; the reasoning justifying granting the motions to dismiss apply with equal force to the proposed Second Amended Complaint. Therefore, the Ceases motion to amend, Doc. 22, is denied. Thus, the defendants' motions to dismiss will be examined against the Amended Complaint.

---

[5] The Department of Education appears to have become involved only through the Ceases' filing of an administrative claim. Also, the Ceases' own allegation that there were no known issues with compliance with J.C.'s IEP in the previous year and J.C. loved going to school at Knollwood that prior year undermines their new and quite vague allegation. See Doc. 10 at 6.

III.     **Analysis of Motions to Dismiss**

A.     **The Exhaustion Requirement and Limitations Period under the IDEA**

The IDEA aims to assure FAPE to children with disabilities. 20 U.S.C. § 1400 et seq.
Under the IDEA, the IEP is the "primary vehicle" for ensuring FAPE to children with disabilities
by, among other things, setting goals and services to be provided the child. Honig v. Doe, 484
U.S. 305, 311 (1988); see 20 U.S.C. § 1414(d). The IDEA provides formal procedures for parents
to address issues with and under the IEP. 20 U.S.C. § 1415. The parents ultimately can seek relief
from a state agency as the Ceases did, Id. § 1415(g), and thereafter file a civil lawsuit, Id. §
1415(i)(2)(A). Although § 1415(*l*) makes clear that the IDEA does not restrict claims under other
federal laws, the section also states that for any suit that "seek[s] relief that is also available under"
the IDEA, the plaintiff must first exhaust IDEA's administrative procedures. Id. § 1412(*l*). A 90-
day period then exists post-exhaustion for a person aggrieved by a denial of an administrative
claim to bring suit. Id. § 1415(b), (g), (i)(2).

The Supreme Court of the United States in Fry v. Napoleon Community Schools, 137 S.
Ct. 743, addressed how the exhaustion requirement of Section 1415(*l*) applied to a case that
alleged, as the Ceases do here, violations of the ADA and Rehabilitation Act arising out of a school
not accepting an accommodation for a special needs child enrolled there. In Fry, the parents and
school disagreed over the need for an assist dog to accompany a child with cerebral palsy to school.
Id. at 751. The Supreme Court read the IDEA exhaustion clause and concluded that "Section
1415(*l*) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the
ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is
also available' under the IDEA." Id. at 753 (quoting 20 U.S.C. § 1415(*l*)). The Supreme Court
then reasoned that the only relief available under the IDEA stemmed from denial of FAPE. Id. at

752–53.  After considering the language of the IDEA further, the Supreme Court stated: "§ 1415(*l*)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a FAPE.  If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(*l*) merely by bringing her suit under a statute other than the IDEA."  Id. at 754.  If the complaint centers on something other than denial of FAPE under an IEP, then exhaustion of IDEA administrative procedures would not be required.  Id. at 752.

The Supreme Court in Fry looked to the substance, rather than the labels used, in the complaint to determine whether the lawsuit in fact sought relief under the IDEA.  "What matters is the crux—or in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading."  Id. at 755.  The Supreme Court instructed that to determine whether the gravamen of the complaint is denial of FAPE, a court must look to the plaintiff's complaint.  Id.

The Supreme Court in Fry suggested two hypothetical questions to help courts analyze whether the gravamen of the complaint is the denial of FAPE.  Id. at 756.  "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school . . . ?  And second, could an *adult* at the school—say, an employee or visitor— have pressed essentially the same grievance?"  Id. (emphasis in original).  If the answer to those questions is "yes," the claim does not allege a denial of FAPE.  Id.  Finally, the Supreme Court in Fry suggested looking to the history of the proceedings to "consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream."  Id. at 757.  While this can indicate that the gravamen of the complaint is a denial of FAPE, depending on the facts, it can also indicate that "the move to a

courtroom came from a late-acquired awareness that the school had fulfilled its FAPE obligation and that the grievance involves something else entirely." Id.

## B.   Determining the Gravamen of the Ceases' Claims

As Fry instructs, "[a] court deciding whether § 1415(*l*) applies must therefore examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education." Id. at 755.  The Ceases' Amended Complaint helpfully has a section entitled FACTS common to and forming the basis of its sixteen various counts.  At the risk of repeating what appears previously in this opinion and order, this Court will quote liberally from the Amended Complaint in analyzing the gravamen of the Ceases' claims. The Amended Complaint in its FACTS section avers that J.C. is diagnosed with autism spectrum disorder and ADHD, was a third-grade student attending Knollwood, and was on an IEP listing milestones and goals. Doc. 10 at 5.  The Amended Complaint states "[t]he IEP also described that J.C. was extremely sensitive to certain foods and could only eat his 'safe' foods." Id.  And "[t]he IEP also described that J.C. needed help in the bathroom and specifically with his pull-ups." Id. The Amended Complaint then states that during the school year at issue, "J.C. came home on multiple occasions with soiled wet pullups, rashes, and blisters from his unchanged pullups." Id. Next, the Amended Complaint avers that the Ceases contacted the individual defendants and unknown staff at Knollwood "on multiple occasions" about "the noncompliance with J.C.'s IEP and their specific requests" relating to pull-up and bathroom help as well as J.C.'s need to eat his "safe" food. Id. at 7.

The Amended Complaint continues: "The IEP did not include permissive use of any method of Emergency Safety Physical Intervention;" "[t]he IEP did not include permissive use of any method of seclusion;" [t]he IEP did not include permissive spanking of J.C." Id. at 6.  The

Amended Complaint avers that Knollwood used a de-escalation area called "Hawaii" in the corner of a classroom, that J.C. was restrained and secluded in "Hawaii" or in a coat closet frequently, and that J.C. was spanked on multiple occasions. Id. at 8. The Amended Complaint then alleges that the individual defendants and Knollwood "failed to properly document J.C.'s daily activities and achievements related to his IEP, as required by law," id. at 8, and "fabricated documents relating to J.C.'s daily activities and achievements related to his IEP," id. at 9. After stating facts about when the Ceases removed J.C. from Knollwood and times when he was homeschooled, the Amended Complaint avers that defendant Gaden threatened the Ceases that if they spoke about J.C.'s abuse, then they "would lose their business of Presidential Limousine and Luxury Tours." Id. at 9. Near the end of the FACTS section of the Amended Complaint, the Ceases allege that J.C. had been threatened with spanking or placement in Hawaii if he told his parents about his treatment at Knollwood. Id.

The gravamen of the Ceases' Amended Complaint is that the defendants violated J.C.'s IEP through ignoring provisions for assistance with pullups and bathroom care, not assuring J.C. receive only what were his "safe" foods, subjecting J.C. to improper discipline, and failing to properly document and indeed fabricating information under the IEP. The only part of the FACTS in the Amended Complaint plainly outside of the scope of the IDEA is the claim that Defendant Gaden made a threatening statement to the Ceases about the effect on their business if they spoke of J.C.'s abuse.

It becomes clear that the crux of the Ceases' claims is failure to provide FAPE under the IDEA when applying the rubric from Fry of evaluating whether the Ceases claims could be brought against a different public entity, such as a public theater or library, or by an adult treated in the same manner. See 137 S. Ct. at 756. A library or public theater would not be responsible for

changing pullups or assisting with unique bathroom needs of patrons, whether a child or an adult. Similarly, a library or public theater would not bear responsibility to assure that patrons, whether children or adult, receive and eat only their uniquely "safe" foods. It is awkward to conceive of a library or public theater put in a position of disciplining a patron, whether child or adult, as such a location would typically ask an adult to leave or, if some sort of after-school program for children, perhaps ask the parent or caregiver to remove the child. One could conceive of such a library or public theater temporarily separating or isolating a disruptive child or adult patron from others, though not spanking or threatening the child or adult patron. In short, the responsibilities of the defendants to J.C. principally stem from the IEP and FAPE responsibility and not from some independent duty that applies outside of the education context in places like libraries or public theaters. The one exception is the contention that Gaden threatened the Ceases separately.

Looking at the procedural history of the Ceases' claims, as Fry guides a court to do, 137 S. Ct. at 757, this Court finds further evidence that the gravamen of the Ceases' claims relate to the IDEA. The Ceases initially chose to pursue an administrative claim under the IDEA to address issues under the IEP relating to "[n]ot providing [J.C.] assistance with changing pullups and leaving [J.C.] in soiled pants all day without assistance" and J.C. "being pushed by staff to eat foods that [J.C.] does not eat due to his sensory issues caused by his Autism." Doc. 19 at 6; Doc. 35-1 at 4. The Department of Education considered that administrative claim and formally denied it on April 8, 2020, giving notice to the Ceases. Doc. 19; Doc. 35-1. Rather than filing suit within the 90 days allowed under the IDEA, the Ceases waited about 20 months before filing their Complaint. Doc. 1; see 20 U.S.C. § 1415(l). The initial Complaint—with nearly identical factual allegations to the Amended Complaint—contained an IDEA claim, which the Ceases then dropped when they filed the Amended Complaint. Doc. 1; Doc. 10. The Ceases' approach is more of a

midstream tactical switch to pursue theories other than under the IDEA than a "late-acquired awareness . . . that the grievance involves something" different from a denial of FAPE. Fry, 137 S. Ct. at 757. The procedural history confirms that violation of the IDEA is the gist of the Ceases' claims.

The Ceases' case is remarkably similar[6] to J.M. v. Francis Howell School District, 850 F.3d 944 (8th Cir. 2017). In J.M., a parent sued a school district, claiming unlawful use of isolation and physical restraints of her child. Id. at 946. Indeed, the plaintiff in J.M. alleged that the child had been "placed in physical restraints for half of the time he actually spent at Defendant's schools." Id. at 948–49. Like J.C., the child in J.M. had, among other conditions, ADHD and autism and was on an IEP. Id. at 946–47. Like in the Ceases' case, the plaintiff in J.M. had originally plead an IDEA claim but deleted the claim through amending the complaint to proceed on theories of Constitutional violations under 42 U.S.C. §§ 1983, 1988, ADA and Rehabilitation Act violations, and state law claims. Id. at 946–47. The Eighth Circuit in J.M. drew from the statute and Fry that the "IDEA's exhaustion requirement also applies to claims under the Constitution, the ADA, the Rehabilitation Act, and other federal laws protecting children with disabilities to the extent those claims seek relief that is also available under the IDEA." Id. at 947 (cleaned up and citation omitted). Considering the "substance, not surface" of the plaintiff's allegations, the Eighth Circuit found the gravamen of the amended complaint in J.M. to be an IDEA claim and concluded that dismissal of the entire case was appropriate for failure to exhaust administrative remedies. Id. at 948–51.

_____

[6] The Plaintiff's Second Amended Complaint in J.M. is available at J.M. v. Francis Howell Sch. Dist., 4:15-cv-00866-NAB, Doc. 25, and while shorter than the Ceases' Amended Complaint, has parallel allegations and claims.

The Ceases characterize the gravamen of their Amended Complaint as seeking redress for abuse of J.C. apart from the IEP. Doc. 36 at 1. Indeed, like the plaintiff in J.M., the Ceases in the Amended Complaint purged their IDEA claim and seek to proceed on several § 1983 and § 1985 claims alleging J.C. was wrongfully seized, Doc. 10 at 10, subjected to the use of excessive force, id. at 13, 20, 23–24, denied equal protection rights, id. at 16, 27, and the subject of a conspiracy to violate J.C.'s constitutional rights, id. at 40. The Amended Complaint also alleges violations of the ADA, id. at 31, the Rehabilitation Act, id. at 32, and several state law statutory and common law tort claims, id. at 34–35, 38–40, 44–45, including violating rights of a disabled person under SDCL § 27B-8-36, Doc. 10 at 34, negligent hiring, training and supervising claims, id. at 35, 37, respondeat superior claims, id. at 38, general negligence, id. at 39, the intentional torts of assault and battery, which lists the tortious conduct as violations of his IEP, id. at 40, and the intentional or negligent infliction of emotional distress, id. at 44–45. Yet all of these causes of action stem from the core allegations in the Amended Complaint about J.C. at Knollwood contrary to the IEP being left in soiled pullups, being fed "unsafe" foods, and being inappropriately disciplined by spanking or placement in a de-escalation area.[7] Again, it is the "substance, not surface" of the allegations that are important, and the "use (or non-use) of particular labels and terms is not what matters." Fry, 137 S. Ct. at 755. And the difference among claims, such as whether compensatory and punitive damages might be available, does not matter either in determining whether the gravamen is an IDEA claim. J.M., 850 F.3d at 950.

The Ceases cite to Moore v. Kansas City Public Schools, 828 F.3d 687 (8th Cir. 2016) and Doe v. Aberdeen School District, 18-cv-1025-CBK, 2019 WL 4740163 (D.S.D. Sept. 27, 2019),

---

[7] Plaintiff refers to this as "seclusion," however, because staff members according to the Amended Complaint were present while J.C. was left in the de-escalation area it does not meet the statutory or the U.S. Department of Education's definition of "seclusion." See supra notes 3–4.

to oppose dismissal. Doc. 21 at 10; Doc. 36 at 8, 11.  The Eighth Circuit decided <u>Moore</u> in 2016, before the Supreme Court released its decision in <u>Fry</u> in 2017, but even so, <u>Moore</u> is readily distinguishable on its facts.  In <u>Moore</u>, a child with intellectual disabilities was attending a Kansas City school built to accommodate 2,500 students but where the enrollment was just 600.  825 F.3d at 689–90.  Unused areas of the school were unsupervised and were to be locked, but a sexual assault of a different female student had reportedly occurred in the unused area of the school.  <u>Id.</u> at 690.  The child's IEP put the school on notice that the child was "susceptible to suggestion due to her significant intellectual and learning disabilities" and tended to wander off.  <u>Id.</u> at 689–90.  Multiple times, other students led the child off into the unused portion of the school where the child was sexually assaulted by another student, including on at least one occasion with another female student serving as a "look out."  <u>Id.</u> at 690.  This continued until the child reported vaginal and anal pain to her parents, resulting in a hospital visit confirming that she had been vaginally and anally raped.  <u>Id.</u>  In <u>Moore</u>, the Eighth Circuit noted that the child's IEP was mentioned in the pleadings "solely to show notice to the school district of the conditions" putting the child at particular risk and was not "the central dispute of this litigation."  <u>Id.</u> at 692 (cleaned up).  By contrast, the Ceases' claims center on school employees at Knollwood acting contrary to J.C.'s IEP and not to a situation at all akin to fellow students leading a child away to repeatedly rape her.

The <u>Doe</u> opinion authorized by another judge in this District is more difficult to distinguish than is <u>Moore</u>.  In <u>Doe</u>, parents of three separate children with special needs on IEPs sued the school district and employees thereof alleging a pattern and practice of physical and emotional abuse, prompting the district judge to conclude that the gravamen of the plaintiff's complaint was not denial of FAPE.  The facts in <u>J.M.</u> are substantially closer to the Ceases' claims than the facts in <u>Doe</u>, and this Court must follow as precedent rulings of the Eighth Circuit as in <u>J.M.</u> and

20

Supreme Court as in Fry.  Fry and J.M., together with the language of § 1415(*l*) oblige this Court to dismiss the federal law claims brought by the Ceases.

What the facts plead by the Ceases establish is a claim under the IDEA.  The Ceases have already brought an administrative action under the IDEA.  Doc. 19; Doc. 35-1.  Under the IDEA parents of the student can challenge the decision of the administrative review agency before any state or federal district court within "90 days from the date of the decision of the hearing officer." 20 U.S.C. § 1415(b), (g), (i)(2)(A)–(B).  While the IDEA does not bar other causes of action, "before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." 20 U.S.C. § 1415(*l*).  As the gravamen of this Amended Complaint was the denial of FAPE under the IDEA, the 90-day limitations period applies to the Ceases claims under the ADA, the Rehabilitation Act, § 1983, and § 1985.

The decision in the underlying administrative matter was rendered on April 8, 2020.  Doc. 19; Doc. 35-1.  The Ceases filed this action on February 17, 2022, Doc. 1, however, to comply with 20 U.S.C. § 1415(*l*) the Ceases would have had to start their federal lawsuit by July 2020. Thus, the federal law claims in the Ceases' Amended Complaint are time barred.  As such, counts I, II, III, IV, V, VI, VII, VIII, and XIV of the Amended Complaint must be dismissed.

When only state law claims remain after the dismissal of claims that were the basis for federal jurisdiction, a court has discretion to dismiss the case entirely or to retain jurisdiction over the remaining state-law claims.  Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original

jurisdiction"); Osborn v. Haley, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction"); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims")).  There is no good reason for this Court to retain jurisdiction over any possible remaining state court claim when there is no remaining claim triggering federal jurisdiction.  This case, for instance, is not one where a trial has started or is close at hand such that concerns of judicial economy are compelling.  Moreover, it is more appropriate for a state court to determine if, given the bar to federal claims under the IDEA limitations period, there are any viable state-law claims for the Ceases to pursue.

## IV.    Conclusion

For the reasons stated above, it is hereby

ORDERED that the Department of Education's Motion to Dismiss, Doc. 17, granted.  It is further

ORDERED that defendants' motions for judicial notice, Doc. 19; Doc. 35, are granted in that the Court takes judicial notice of the existence of the administrative record and the denial of the Ceases' IDEA-based administrative claim, but not any of the findings in the denial.  It is further

ORDERED that the Ceases' motion for leave to amend their amended complaint, Doc. 22, is denied.  It is finally

ORDERED that the remaining Defendants' Motion to Dismiss, Doc. 33, is granted.


DATED this 30ᵗʰ day of November, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE