UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JEREMY CEASE AND SARA CEASE, AS GUARDIANS OF J.C.;[1] <br><br> Plaintiffs, <br><br> vs. <br><br> CHRISTINA HENRY PRINCIPAL, IN HER INDIVIDUAL CAPACITY, DR. GREG GADEN, DIRECTOR OF SPECIAL EDUCATION, IN HIS INDIVIDUAL CAPACITY, CHARLIE SERSEN, IN HIS INDIVIDUAL CAPACITY, BROOKE CHENEY, JAIMIE MUTTER, SPECIAL EDUCATION TEACHER, IN HER INDIVIDUAL CAPACITY, UNKOWN STAFF AT KNOLLWOOD ELEMENTARY, DR. LORI SIMON, THE RAPID CITY AREA SCHOOL DISTRICT, SOUTH DAKOTA DEPARTMENT OF EDUCATION, RAPID CITY SCHOOL BOARD, <br><br> Defendants. | 5:22-CV-05015-RAL <br><br><br> OPINION AND ORDER GRANTING MOTIONS TO AMEND COMPLAINT AND TO RECONSIDER WITH DISMISSAL OF SOUTH DAKOTA DEPARTMENT OF EDUCATION |

Plaintiffs Jeremy Cease and Sara Cease (the Ceases) brought this case as guardians of their child, J.C. The Ceases enrolled J.C. at Knollwood Elementary (Knollwood), which is a part of Defendant Rapid City Area School District (RCASD) overseen by Defendant Rapid City School Board (RCSB). While at Knollwood, J.C. was the custodial and tutelary responsibility of

---

[1] Because this Court grants leave to amend, the new caption contained in Plaintiffs' proposed Second Amended Complaint is used here.

1

Defendants Dr. Greg Gaden (Gaden), Christina Henry (Henry), Charlie Sersen (Sersen), Brooke Cheney (Cheney), and Jamie Mutter (Mutter). The Ceases allege that Defendants subjected J.C. to routine abuse at Knollwood, which included leaving J.C. in soiled pull-ups, forcing J.C. to eat "unsafe" sensory foods, and disciplining J.C. through spanking and seclusion. Doc. 53-1 ¶¶ 22–62. The Ceases' proposed Second Amended Complaint alleges sixteen counts against the defendants named above, including against the South Dakota Department of Education (Department of Education). Doc. 53-1.

Defendant Department of Education has filed a motion to reconsider and seeks dismissal, while the Ceases have filed a motion to amend and a proposed Second Amended Complaint. Because amendment of the complaint is not futile as to most defendants and leave to amend should be freely granted, the Ceases' Second Motion to Amend/Correct, Doc. 53, is granted. The motion to reconsider and the decision in Perez v. Sturgis Public Schools, 143 S. Ct. 859 (2023) prompts this Court to withdraw its prior dismissal for failure to state a claim. Yet, even after amendment of the complaint, the Department of Education has immunity under the Eleventh Amendment and is dismissed as a party to this suit.

I.  **Motion to Amend**

After the Department of Education filed its motion for reconsideration, the Ceases again moved to amend their Amended Complaint, Doc. 53, and attached their proposed Second Amended Complaint, Doc. 53-1. "A decision whether to allow a party to amend [a] complaint is left to the sound discretion of the district court . . . ." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008). "A party may amend its pleading once as a matter of course within . . . 21 days after serving it," and the Ceases did so to delete their Individuals with Disabilities Education Act (IDEA) claim and to add the Department of Education as a party. Fed. R. Civ. P. 15(a)(1)(A);

2

see Doc. 1 ¶¶ 156–60; Doc. 10. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Motions for leave to amend "should be freely [granted] in order to promote justice." Plymouth Cty. v. Merscorp, Inc., 774 F.3d 1155, 1160 (8th Cir. 2015). In response to the Department of Education's prior motion to dismiss, the Ceases filed a motion to Amend/Correct, Doc. 22, which sought to add "Unknown Staff" at the Department of Education as defendants who were allegedly on notice of abusive conduct at J.C.'s school but took no action. Doc. 22-1. This Court denied leave to amend because such amendment would have been futile, Doc. 41 at 9–12.

Denial of a motion to amend "is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." Hillesheim v. Myron's Cards & Gifts, Inc., 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted). An amendment is futile if it "could not withstand a motion to dismiss under Rule 12(b)(6)." Id. (citation omitted). Denial of a motion to amend can also be appropriate when the motion was made in "an effort to avoid an adverse summary judgment ruling," as such an action is typically indicative of bad faith. Postma v. First Fed. Sav. & Loan Ass'n of Sioux City, No. C 93-4058, 1995 WL 807082, at *11 (N.D. Iowa Mar. 28, 1995); see also Local 472 v. Ga. Power Co., 684 F.2d 721, 724 (11th Cir. 1982) (holding that a motion to amend was properly denied when done to avoid an adverse summary judgment ruling); Kennedy v. Josephthal & Co., 814 F.2d 798, 806 (1st Cir. 1987) (same); Hutchinson v. Lausel, 672 F. Supp. 43, 46–47 (D.P.R. 1987) (applying the same reasoning to motions to dismiss).

There is no basis to presume that the Ceases' motion to amend has behind it a dilatory motive. Nor would this Court characterize the Ceases' motion to amend as being in bad faith. The principal changes in the Second Amended Complaint are to delete almost all references to J.C.'s

individualized education plan (IEP), by which the Ceases seek to undercut the reasoning this Court used in its prior Opinion and Order on Pending Motions and Granting Motions to Dismiss. See Doc. 53-1 ¶¶ 26–28, 30, 32–34, 40, 43, 52. The other changes add information about J.C.'s needs, id. ¶¶ 27–28, 30, and refine allegations of certain alleged misconduct of defendants, id. ¶¶ 47–48, 50, 78–80, 92–94, 106–07, 122–24.

As concerns allegations against the Department of Education, the proposed Second Amended Complaint claims that the Department of Education had notice on December 6, 2019, through a different student's claim of "unconstitutional conduct taking place at Knollwood" due to that child's disabilities and did not "immediately intervene to remediate the conditions for J.C. and other students." Id. ¶ 62. The Second Amended Complaint makes specific mention of when and who at the Department of Education received notice of the abusive practices alleged to have taken place at Knollwood to a different child. Id. The Second Amended Complaint alleges that the Department of Education delayed until February 3, 2020, in taking corrective action and did so only for the individual student. Id. The Ceases in the Second Amended Complaint repeat this assertion in many of their causes of action about the Department of Education having knowledge of unconstitutional practices within Knollwood and failing to take immediate actions to prevent such practices from continuing regarding J.C. Id. ¶¶ 69, 80, 94, 107, 124.

Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). To be plausible, the allegation must be more than a "naked assertion[] devoid of further factual enhancement" to allow this Court to draw a reasonable inference that the Department of Education is liable for the alleged misconduct. See id. (cleaned up and citations omitted). Despite the more detailed factual allegations, the motion to amend is

4

ultimately futile as against the Department of Education, but not futile against the remaining defendants. The motion to amend, Doc. 53, is granted.

This Court will deem the Department of Education's motion to reconsider to challenge whether the Second Amended Complaint, Doc. 53-1, states a claim against the Department of Education. Cartier v. Wells Fargo Bank, N.A., 547 Fed. App'x 800, 804 (8th Cir. 2013) (upholding the district court's decision to treat an already pending motion to dismiss as a motion to dismiss an amended complaint); Ellipso, Inc., v. Mann, 460 F. Supp. 2d 99, 103 (D.D.C. 2006) (stating that the court need not dismiss a pending motion when a party amends its pleadings if "the amended pleading suffers from the same defects as the original and does not change the legal theories underlying the motion"); see 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. Westlaw updated 2023) (acknowledging the futility in requiring a defendant to refile a motion after an amended pleading is filed when the amended pleading suffers the same defect as the original). Doing so avoids the need for the Department of Education to re-file a motion to dismiss after the Second Amended Complaint is filed, the parties to file their briefing anew, and the delay caused as a result.

## II.   Motion to Reconsider

The Department of Education moves for this Court to reconsider the judgment that has now been vacated by stipulation of the parties and reasserts the Eleventh Amendment argument for dismissal that this Court did not reach in its initial decision. Doc. 48; Doc. 49 at 2. The Ceases assert that reconsideration is inappropriate because the prior decision has been vacated by stipulation and cannot to be reconsidered. Doc. 52 at 6. The judgment from the Eighth Circuit simply reads: "The joint motion to vacate the judgment of dismissal and remand to district court is granted." Doc. 46. In accordance with that judgment, the case was remanded to this Court.

5

Doc. 47. The joint motion referenced in the Eighth Circuit's judgment requested that the Eighth Circuit "remand the matter to the district court to reconsider the decision in light of Perez." Doc. 49 at 9.

The Eighth Circuit did not decide any substantive issue in the case, leaving this Court to determine not only the impact of Perez v. Sturgis Public Schools, 143 S. Ct. 859 (2023), but also all other issues in the case. See Petrone v. Werner Enters., 42 F.4th 962, 968 (8th Cir. 2022); Marshall v. Anderson Excavating & Wrecking Co., 8 F.4th 700, 711 (8th Cir. 2021). This Court should "follow decisions made in earlier proceedings to prevent the relitigation of settled issues in [the] case, thereby protecting the settled expectations of parties, ensuring uniformity of decisions, and promoting judicial efficiency." Id. But, the mandate, judgment, and joint motion are broadly phrased, leaving this Court to reconsider its decision in light of Perez as well as any other applicable law.

As discussed below, Perez alters this Court's application of Fry v. Napoleon Cmty. Schools, 580 U.S. 154 (2017), and requires reconsideration of dismissal. Reconsideration of the entire motion to dismiss is proper, including addressing the Eleventh Amendment immunity assertion. See Kipkemboi v. Holder, 587 F.3d 885, 891 (8th Cir. 2009). Doing so is entirely proper and does not change any issue determined in this case previously or change a party's expectations. See Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988); Preston v. City of Pleasant Hill, 642 F.3d 646, 652 (8th Cir. 2011).

### III. Motion to Dismiss

    A.    **Relevant Facts Taken from the Second Amended Complaint[2]**

J.C. is the son of Jeremy and Sara Cease and has been diagnosed with autism spectrum disorder and ADHD. Doc. 53-1 ¶¶ 1–2, 24. Due to J.C.'s diagnosis, J.C. was eligible to receive special education and related services while at school at Knollwood. Id. ¶¶ 24, 26–29. Henry, Gaden, Sersen, Cheney, Mutter, and other staff at Knollwood were on notice to provide services concerning J.C.'s extreme food sensitivity and adult assistance with toileting, mainly having pull-ups routinely changed throughout the school day. Id. ¶¶ 24, 26–30. J.C.'s Individualized Education Plan[3] (IEP) did not endorse the use of physical force, physical restraint, or involuntary solitary confinement, as his autism made loud sounds, bright lights, and physical contact deeply distressing. Id. ¶ 27. J.C. loved attending Knollwood during the 2018–2019 school year, and the Ceases experienced no known issues with school officials complying with J.C.'s IEP during that school year. Id. ¶¶ 32–34. However, that was not true for the 2019–2020 school year when J.C. was enrolled in the third grade at Knollwood with his primary teacher being Mutter. Id. ¶¶ 24–25, 36–37.

During the 2019–2020 school year, J.C. came home from school on multiple occasions with soiled or wet pull-ups that caused painful rashes and blisters, and J.C. reported being forced to eat food that was not his "safe food." Id. ¶¶ 37, 41. Knollwood created a de-escalation area called "Hawaii," which was a classroom corner separated from the rest of the classroom by three five-foot-high dividers. Id. ¶¶ 44–46. When J.C. was placed in Hawaii, all other students left the

---

[2] This Opinion and Order makes no findings of fact, but takes as true, at this point, the well-pleaded facts in the Second Amended Complaint.
[3] Though the Second Amended Complaint deletes all references to J.C.'s IEP except in paragraphs 53 and 197, J.C. in fact was on an IEP and the existence and terms of the IEP are relevant to the claims against the other defendants.

classroom, the door was held shut, and Knollwood staff would be outside of the classroom to monitor J.C. Id. ¶ 47. The Ceases' claim that Mutter and Sersen physically carried and dragged J.C. into Hawaii and placed J.C. in a coat closet multiple times, id. ¶¶ 48–49, and spanked J.C. multiple times during the school year, id. ¶ 50. The Ceases were not notified of the use of force, physical restraint, or confinement of J.C. and were never informed that J.C. presented a clear and present danger to himself or others. Id. ¶¶ 51, 61; see also SDCL § 13-32-20. The Ceases also claim that school officials failed to properly document J.C.'s daily activities and achievements under the IEP and indeed falsified documentation. Doc. 53-1 ¶¶ 52–53.

The Ceases began to homeschool J.C. in the fall of 2019. Id. ¶ 55. About two months after J.C. left Knollwood, the Department of Education, through representatives Michelle Bennet and Wendy Trujillo, received notice on December 6, 2019, of allegations of a different disabled child alleging similar unconstitutional conduct taking place at Knollwood. Id. ¶ 62. The Department of Education issued corrective action February 3, 2020, for the initial complaining student "without consideration to the widespread practice within Knollwood." Id.

The Ceases reenrolled J.C. in another elementary school briefly in February of 2020, but again removed J.C. and homeschooled him thereafter. Id. ¶¶ 57, 60. The Ceases allege that Defendant Gaden threatened them that if "they spoke of anything to anyone" about J.C.'s treatment at Knollwood, then Gaden "would ensure [the Ceases] would lose their business of Presidential Limousine and Luxury Tours." Id. ¶ 58. Around February 11, 2020, J.C. told his father that the school had threatened spanking or putting him into Hawaii if he told his parents what was happening at school. Id. ¶ 59.

The Ceases filed an IDEA administrative complaint with the Department of Education alleging a denial of J.C.'s right to free appropriate public education (FAPE) due to forcing him to

eat "unsafe" foods and leaving him in soiled pull ups. Doc. 18 at 2; Doc. 34 at 2–3. The Department of Education appointed an investigator and issued a final investigation report denying relief to the Ceases on April 8, 2020. Doc. 19; Doc. 35-1. On February 15, 2022, the Ceases started this action asserting federal question jurisdiction by alleging the above facts and seeking remedies under 42 U.S.C § 1983 and § 1985, the IDEA, the Americans with Disabilities Act of 1990 (ADA), § 504 of the Rehabilitation Act of 1973, and invoking supplemental jurisdiction to allege various state common law claims. Doc. 1. The Ceases filed an Amended Complaint before the defendants answered that deleted the IDEA claim from the complaint and added the Department of Education as a party. Doc. 10; see Doc. 1 ¶¶ 156–60. The various defendants filed their respective motions to dismiss arguing that any claim related to the IDEA was time barred and that the gravamen of the Amended Complaint was an IDEA claim. Doc. 17; Doc. 33. The Department of Education's motion to dismiss also claimed the suit was barred under the Eleventh Amendment. Doc. 17. In response, the Ceases filed a motion to allow a second amended complaint. Doc. 22. This Court denied the Ceases' motion to file a second amended complaint and granted the Motion to Dismiss finding the action was time barred under the IDEA based on Fry v. Napoleon Cmty. Schools, 580 U.S. 154 (2017). Doc. 41.

The Ceases then appealed that decision. Doc. 43. While this case was on appeal to the Eighth Circuit, the Supreme Court issued its decision in Perez v. Sturgis Public Schools, 143 S. Ct. 859 (2023) interpreting the IDEA's exhaustion requirement not to apply as broadly as Fry implied. Due to Perez, the parties made a joint motion to vacate the judgment of dismissal and remand the matter back to this Court, which the Eighth Circuit granted. Doc. 46. Upon remand, the Department of Education filed a Motion for Reconsideration seeking dismissal based on Eleventh Amendment immunity. Doc. 48.

### B.     Standard of Review on Motion to Dismiss

A challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). As such, courts must accept a plaintiff's factual allegations as true and make all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). When determining whether to grant a Rule 12(b)(6) motion for failure to state a claim, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up and citation omitted).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine

Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730. This Court views a motion to dismiss due to Eleventh Amendment immunity as a factual challenge to the limited extent that this Court considers information outside the pleadings on whether the defendant sued is a state agency. Otherwise, this motion to dismiss is a facial challenge.

To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do

not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (citation and internal marks omitted) (alteration in original).

### C. The IDEA's Exhaustion Requirement and Limitations Period and Perez

The IDEA aims to assure FAPE to children with disabilities. 20 U.S.C. § 1400 et seq. Under the IDEA, the IEP is the "primary vehicle" for ensuring FAPE to children with disabilities by, among other things, setting goals and services to be provided to the child. Honig v. Doe, 484 U.S. 305, 311 (1988); see 20 U.S.C. § 1414(d). The IDEA provides formal procedures for parents to address issues with and under the IEP. 20 U.S.C. § 1415. The parents ultimately can seek relief for non-compliance with the IEP from a state agency as the Ceases did, id. § 1415(g), and thereafter file a civil lawsuit, id. § 1415(i)(2)(A). Although § 1415(*l*) makes clear that the IDEA does not restrict claims under other federal laws, the section also states that for any suit that "seek[s] relief that is also available under" the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures. Id. § 1412(*l*). A 90-day period then exists post-exhaustion for a person aggrieved by a denial of an administrative claim to bring suit. Id. § 1415(b), (g), (i)(2).

The Supreme Court in Fry addressed how the exhaustion requirement of Section 1415(*l*) applied to a case that alleged, as the Ceases do here, violations of the ADA and Rehabilitation Act arising out of a school not adequately accommodating a special needs child enrolled there. 580 U.S. 154. In Fry, the parents and school disagreed over the need for an assist dog to accompany a child with cerebral palsy to school. Id. at 162. The Supreme Court read the IDEA exhaustion clause and concluded that "Section 1415(*l*) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA." Id. at 165 (quoting 20 U.S.C. § 1415(*l*)). The Supreme Court then reasoned that the only relief available under the IDEA

stemmed from denial of FAPE. Id. at 163–65. After considering the language of the IDEA further, the Supreme Court stated: "§ 1415(*l*)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a FAPE. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(*l*) merely by bringing her suit under a statute other than the IDEA." Id. at 168. If the complaint centers on something other than denial of FAPE under an IEP, then exhaustion of IDEA administrative procedures would not be required. Id. at 165. The Supreme Court in Fry looked to the substance, rather than the labels used, in the complaint to determine whether the lawsuit in fact sought relief under the IDEA. "What matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." Id. at 169. The Supreme Court instructed that to determine whether the gravamen of the complaint is denial of FAPE, a court must look to the plaintiff's complaint. Id.

The Supreme Court in Fry suggested two hypothetical questions to help courts analyze whether the gravamen of the complaint is the denial of FAPE. Id. at 171. "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school . . . ? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" Id. (emphasis in original). If the answer to those questions is "yes," the claim does not allege a denial of FAPE. Id. Finally, the Supreme Court in Fry suggested looking to the history of the proceedings to "consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream." Id. at 173. While this can indicate that the gravamen of the complaint is a denial of FAPE, depending on the facts, it can also indicate that "the move to a courtroom came from a late-acquired awareness that the school had fulfilled its FAPE obligation

13

and that the grievance involves something else entirely." Id. This Court relied heavily on language from Fry in dismissing the Ceases' complaint. Doc. 41.

In March 2023, the Supreme Court issued its decision in Perez, which revisited the "extent to which children with disabilities must exhaust these administrative procedures under IDEA before seeking relief under other federal antidiscrimination statutes." 143 S. Ct. at 862. The Court found § 1415(*l*) to have "two salient features":

> First, the statute sets forth this general rule: "Nothing in [IDEA] shall be construed to restrict" the ability of individuals to seek "remedies" under the ADA or "other Federal laws protecting the rights of children with disabilities." Second, the statute offers a qualification, prohibiting certain suits with this language: "[E]xcept that before the filing of a civil action under such [other federal] laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted." In turn, subsections (f) and (g) provide affected children and their parents with the right to a "due process hearing" before a local or state administrative official, § 1415(f)(1)(A), followed by an "appeal" to the state education agency, § 1415(g)(1).

Id. at 863–64.

The Court in Perez found that the limiting language in subsection (*l*) applies only to those suits seeking relief under other federal law that is also available under the IDEA. Id. at 864. Thus, a plaintiff is required to "exhaust the administrative processes found in subsections (f) and (g) only to the extent he pursues a suit under another federal law for *remedies* IDEA also provides." Id. As such, when a plaintiff brings a suit for compensatory damages, which is a form of relief that the IDEA does not provide, administrative exhaustion is not required. Id. at 864. The Court characterized Perez as posing an analogous, but different, question than in Fry: "whether a suit admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes if the remedy a plaintiff seeks is not one IDEA provides." Id. at 865. In short, the Court in Perez concluded that a plaintiff does not

have to exhaust administrative processes under the IDEA when seeking a remedy that is unavailable under the IDEA. Id.

The Second Amended Complaint in this matter only seeks compensatory damages. Doc. 53-1 ¶¶ 73, 86, 100, 116, 134, 149, 158, 164, 171, 180, 187, 192, 197, 206. While paragraph 19 of the Second Amended Complaint makes a statement of law that declaratory and injunctive relief are available under certain statutes and rules cited, at no point do the Ceases in their Second Amended Complaint, or the Amended Complaint for that matter, actually request any such remedy. See generally Docs. 10, 53-1. Instead, the "WHEREFORE" clauses all demand "trial by jury, judgment for damages" against the defendants named in each Count "and further demands interest, costs," and, when available, attorney's fees. See generally Doc. 53-1. Based on the Supreme Court's ruling in Perez, the exhaustion requirement of § 1415(*l*) is inapplicable because the Ceases only seek money damages that a claim under IDEA cannot provide. Perez, 143 S. Ct. at 863–64. Thus, considering how Perez changes the analysis under Fry, this Court reconsiders and rescinds its prior Opinion and Order on Pending Motions and Granting Motions to Dismiss, Doc. 41, because the Second Amended Complaint survives dismissal notwithstanding the gravamen appearing to be failure to abide by J.C.'s IEP at Knollwood because the compensatory damages sought are not available under the IDEA. That then leaves the Department of Education's claim to Eleventh Amendment immunity to address.

D.   **Eleventh Amendment Immunity**

The Department of Education argues that the Ceases' claims against it are barred by the Eleventh Amendment. Doc. 18 at 4. The Eleventh Amendment immunizes states from "suits brought in federal courts by her own citizens as well as by citizens of another [s]tate." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993). Unless waived,

15

neither a state nor the arms of the state may "be subject to suit in federal court," regardless of whether the suit seeks money damages or injunctive relief. Puerto Rico Aqueduct, 506 U.S. at 144–47 (citation omitted); see also Gordon v. Bd. of Trs. of the Univ. Ark., 168 F. Supp. 3d 1148, 1154 (E.D. Ark. 2016) ("[Under the Eleventh Amendment] the Board of Trustees is immune from suit based on [Plaintiffs'] § 1983 and § 1985 claims, whether for damages or injunctive relief."); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121–23 (1984) (finding that the Eleventh Amendment barred state law claims brought against state agencies in federal district courts). The Supreme Court has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity. Will v. Mich. Dept. of State Police, 491 U.S. 58, 65 (1989) (citations omitted).

Whether an entity, such as the Department of Education, is entitled to Eleventh Amendment immunity as an "arm of the state" depends on its relationship to the state, which is generally assessed through three factors: (1) the entity's powers and characteristics as created by state law, (2) the degree of its autonomy or state control, and (3) whether it is funded by the state treasury, such that an award would flow through the state treasury. Wade-Lemee v. Bd. of Educ., 205 Fed. App'x 477, 478 (8th Cir. 2006) (citing Gorman v. Easley, 257 F.3d 738, 743–744 (8th Cir. 2001), rev'd on other grounds sub nom. Barnes v. Gorman, 536 U.S. 181 (2002); see also Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985). Here, The Department of Education was created by state law and exists as a department within the executive branch. See SDCL § 1-45-1; S.D. Sess. L. ch. 272 §§ 1, 63. The Department of Education is supervised by the Governor, who also appoints the Secretary of Education as the Department's single executive. S.D. Const. art. IV, § 9. Further, the Department of Education is an agency of the State of South Dakota, Shumaker v. Canova Sch. Dist., 322 N.W.2d 869, 870 n.1 (S.D. 1982) (observing that the Department of

Education is an "agency" under SDCL 1-26-1(1) and "is not a unit of local government"), that is funded by the State, see generally SDCL 1-45-4(1). And any monetary award granted against the Department of Education would inevitably flow through the State's coffers. See Wade-Lemee, 205 Fed. App'x at 479 (noting how "vulnerability of the State's purse" is one of "the most salient factor[s] in Eleventh Amendment determinations"). Under these facts, the Department of Education is immune from suit as an arm of the State. Cf. Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (distinguishing an arm of the State from political subdivisions and municipal corporations); Miener v. Missouri, 673 F.2d 969, 980–81 (8th Cir. 1982) (distinguishing a state Department of Education, which does have immunity, from a school board of a political subdivision, which does not qualify as an arm of the state for Eleventh Amendment immunity). The Ceases do not allege or argue otherwise, nor present any claims or evidence that the Department of Education has waived Eleventh Amendment immunity.

Yet, Ex Parte Young, 209 U.S. 123 (1908), creates "a narrow exception [to Eleventh Amendment immunity] that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." Whole Woman's Health v. Jackson, 142 S. Ct. 522, 532 (2021). However, the Second Amended Complaint does not name any individual working for the Department of Education as a party nor seek to enjoin that person from any action. All individuals named in the caption of the Second Amended Complaint are Rapid City educators, administrators, or entities. See United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5, 688 F.3d 410, 414 (8th Cir. 2012); Miener, 673 F.2d at 980 (8th Cir. 1982). The only Department of Education employees even mentioned are those who received notice of the wrongdoing concerning a different student after J.C. had

withdrawn from Knollwood. Thus the Ex Parte Young exception to Eleventh Amendment immunity does not apply.

Because no waiver or exceptions to Eleventh Amendment immunity exist and the Department of Education has Eleventh Amendment immunity as an arm of the State of South Dakota, claims brought against the Department of Education are dismissed without prejudice. The Department of Education in turn is dismissed from this suit.

## IV. Conclusion and Order

For the reasons explained above, it is

ORDERED that Plaintiffs' Second Motion to Amend/Correct, Doc. 53, is granted and Plaintiffs have leave to file their Second Complaint, Doc. 53-1, within the next fifteen days. It is further

ORDERED that the Motion for Reconsideration, Doc. 48, is granted to the extent that this Court rescinds the prior Opinion and Order Granting Motion to Dismiss, Doc. 41, and grants dismissal without prejudice only to the Department of Education for failure to state a claim against that state agency due to Eleventh Amendment immunity.

DATED this 18th day of August, 2023.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE